1

2

3

4

5

6

7

8             IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   REGINA L. ANGELI,

11              Plaintiff,                   No. CIV S-06-2592 EFB

12        vs.

13   MICHAEL J. ASTRUE,              <u>ORDER</u>
     Commissioner of Social Security,[1]

14
               Defendant.
15   _____/

16        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

17   ("Commissioner") denying plaintiff's application for Disability Income Benefits ("DIB") and

18   Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act

19   ("Act"), respectively.  For the reasons that follow, plaintiff's motion for summary judgment or

20   remand is granted in part, the Commissioner's motion for summary judgment is denied, and the

21   Clerk is directed to enter judgment for plaintiff.

22   ////

23   ////

24   _____

25        [1] On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social
     Security, replacing Jo Anne B. Barnhart, the original defendant herein.  Pursuant to 42 U.S.C.
     § 405(g) and Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in this
26   action.

**I. BACKGROUND**

Plaintiff, born May 5, 1958, applied for disability benefits on January 21, 2004. Administrative Record ("AR") 27-28.  Plaintiff alleged she was unable to work since August 1, 2002, due to "diabetes, Grave's Disease, tremors, chest pains, migraines and mental problems." AR 29, 36, 45.

On November 21, 2005, following a hearing before administrative law judge ("ALJ") Antonio Acevedo-Torres, plaintiff was found not disabled.[2]  AR 14-22.  The ALJ made the following findings:

> 1.   The claimant meets the nondisability requirements for a period of disability and Social Security Disability

---

[2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401, *et seq*.   Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382, *et seq*.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) and 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Bowen*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.     The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.     The claimant's depression is considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).

4.     These [*sic*] medically determinable impairments [*sic*] do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.     The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.     The claimant has the following residual functional capacity: She is able to perform simple routine tasks with limited public contact.  She has no physical limitations with regard to her ability to perform work activity.

7.     Due to her mental impairment, the claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

8.     The claimant is a "younger individual between the ages of 45 and 49" (20 CFR §§ 404.1563 and 416.963).

9.     The claimant has a "high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.945).

10.    The claimant has no transferable skills from semi-skilled work previously performed as described in the body of the decision (20 CFR §§ 404.1568 and 416.968).

11.    The claimant has no exertional limitations (20 CFR §§ 404.1545 and 416.945).

12.    Considering the range of work at all levels that the claimant is still functionally capable of performing, in combination with her age, education, and work experience, and using section 204.00 of the Medical-Vocational Guidelines as a framework for decision-making, the claimant is not disabled.

13. The claimant's history of substance abuse is not a contributing factor material to this determination.[3]

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

AR 21-22.

On September 27, 2006, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. AR 5-7.

## II. ISSUES PRESENTED

In her motion for summary judgment, plaintiff alleges six errors in the Commissioner's decision. First, she alleges that the ALJ failed to find several of her impairments "severe" at step two of the sequential evaluation. Second, she alleges that the ALJ erred by failing to find that her heart condition met Listing 4.08 (cardiomyopathies). Third, she alleges that the ALJ mischaracterized the medical evidence and failed to credit the opinions of her treating physicians and mental health care providers. Fourth, she asserts that the ALJ failed to credit her testimony and third party statements as to the nature and extent of her functional limitations. Fifth, she alleges that the ALJ erred in assessing her residual functional capacity. Finally, she alleges error at step five of the sequential evaluation, asserting that the ALJ improperly used the Medical Vocational Guidelines despite the presence of non-exertional functional limitations, and asserts that he should have obtained the testimony of a vocational expert.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

---

[3] The record shows that plaintiff had previously abused alcohol and used cocaine and methamphetamine, but had been "clean" for around three years at the time of the hearing. *See* AR 228, 688.

1  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

2  180 F.3d 1094, 1097 (9th Cir. 1999).

3       The findings of the Commissioner as to any fact, if supported by substantial evidence,

4  are conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

5  more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521

6  (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to

7  support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol.*

8  *Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

9       "The ALJ is responsible for determining credibility, resolving conflicts in medical

10 testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

11 2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

12 interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

13 *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

14 **IV.  ANALYSIS**

15      **A.  <u>Step Two</u>**

16      "The step-two inquiry is a de minimis screening device to dispose of groundless claims."

17 *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  The purpose is to identify claimants

18 whose medical impairment is so slight that it is unlikely they would be disabled even if age,

19 education, and experience were taken into account.  *Bowen*, 482 U.S. at 153.

20      At step two of the sequential evaluation, the ALJ determines which of claimant's alleged

21 impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c).  A severe impairment

22 significantly limits a person's physical or mental ability to do basic work activities.  *Id.*  "An

23 impairment is not severe if it is merely 'a slight abnormality (or combination of slight

24 abnormalities) that has no more than a minimal effect on the ability to do basic work activities."

25 *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citing Social Security Ruling ("SSR")

26 96-3p (1996)).

1    If a severe impairment exists, all medically determinable impairments must be considered

2    in the remaining steps of the sequential analysis.  20 C.F.R. § 404.1523.  The ALJ "must

3    consider the combined effect of all of the claimant's impairments on her ability to function,

4    without regard to whether each alone [i]s sufficiently severe."  *Smolen*, 80 F.3d at 1290; 20

5    C.F.R. § 404.1523.

6    Here, the ALJ found that plaintiff's only severe impairment was depression.  Plaintiff

7    argues that the ALJ should have also found her non-ischemic cardiomyopathy, diabetes mellitus,

8    hepatitis C with liver disease, Grave's disease with hyperthyroidism, and bipolar disorder

9    "severe" at step two.  Plaintiff asserts that "if the effects of an impairment are not included in the

10   severity analysis, there is no assurance that they will have any role whatsoever in the

11   determination of plaintiff's disability."  Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Br."),

12   42:21-23.

13   While these conditions may indeed be serious, plaintiff's argument ignores the function

14   of step two as a gatekeeping mechanism to dispose of groundless claims.  Once a plaintiff

15   prevails at step two, regardless of which condition is found to be severe, the Commissioner

16   proceeds with the sequential evaluation, considering at each step all other alleged impairments

17   and symptoms that may impact her ability to work.  *See* 42 U.S.C. § 423(d)(2)(B).  Here,

18   plaintiff prevailed at step two.  Although the ALJ failed to consider evidence of plaintiff's

19   functional limitations throughout the remaining sequential evaluation, as addressed below, this

20   does not necessarily constitute error at step two of the analysis.  Rather, the question is whether

21   the ALJ properly considered the functional limitations of all medically determinable impairments

22   at the remaining steps.  *See Smolen*, 80 F.3d at 1290 (if one severe impairment exists, all

23   medically determinable impairments must be considered in the remaining steps of the sequential

24   analysis) (citing 20 C.F.R. § 404.1523).

25   ////

26   ////

1    **B.  Step Three, Listing 4.08**

2         Plaintiff contends that the ALJ failed to consider whether or not her heart condition met

3    Listing 4.08.

4         The Social Security Regulations' "Listing of Impairments" is comprised of impairments

5    to certain specified categories of body systems that are severe enough to preclude a person from

6    performing gainful activity and are, per se, disabling.  *Young v. Sullivan*, 911 F.2d 180, 183-84

7    (9th Cir. 1990); 20 C.F.R. §§ 404.1520(d), 416.924(d).  Conditions described in the listings are

8    considered so severe that they are irrebuttably presumed disabling.  20 C.F.R. §§ 404.1520(d),

9    416.924(d).  In meeting or equaling a listing, all the requirements of that listing must be met.

10   *Key v. Heckler*, 754 F.2d 1545, 1550 (9th Cir. 1985).

11        To meet a listed impairment, a claimant must establish that he or she meets each

12   characteristic of a listed impairment relevant to his or her claim.  To equal a listed impairment, a

13   claimant must establish symptoms, signs and laboratory findings "at least equal in severity and

14   duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is

15   not listed, then to the listed impairment "most like" the claimant's impairment.  20 C.F.R.

16   §§ 404.1526, 416.925.

17        Plaintiff alleges her diagnosed cardiomyopathy meets Listing 4.08 via Listing 4.04B.

18   Section 4 of the Listings addresses cardiovascular disorders.  Listing 4.08 addresses

19   "cardiomyopathies, documented by appropriate imaging techniques or cardiac catheterization."[4]

20   20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 4.08 (2005).  The Listing directs that such disorders

21   be evaluated under the criteria in 4.02, 4.04, 4.05, or 11.04, depending on its effects on the

22   ////

23   ////

24

25        [4] Listing 4.08 has been deleted since the date of the ALJ's decision.  *See* Revised
     Medical Criteria for Evaluating Cardiovascular Impairments, 71 Fed. Reg. 2,312 (January 13,
     2006).  The listing, as it existed at the time of the ALJ's decision, is applicable for purposes of

26   this court's review of the case.  *See id.*

1   claimant.[5]  *Id.*

2       Listing 4.04B describes "ischemic heart disease, with chest discomfort associated with

3   myocardial ischemia, as described in 4.00E3[6] . . . . with:

> [i]mpaired myocardial function, documented by evidence of
> hypokinetic, akinetic, or dyskinetic myocardial free wall or septal
> wall motion with left ventricular ejection fraction of 30 percent or
> less, and an evaluating program physician, preferably one
> experienced in the care of patients with cardiovascular disease, has
> concluded that performance of exercise testing would present a
> significant risk to the individual, and resulting in marked limitation
> of physical activity, as demonstrated by fatigue, palpitation,
> dyspnea, or anginal discomfort on ordinary physical activity, even
> though the individual is comfortable at rest.

10  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 4.04B (2005).

11      Plaintiff was diagnosed with severe cardiomyopathy after multiple chest x-rays, an

12  electrocardiogram, and cardiac catheterization.  AR 277, 307-08, 358, 388.  Thus, plaintiff meets

13  the first part of Listing 4.08.  However, she does not meet the second part of the listing via

14  4.04B.  Plaintiff was diagnosed with non-ischemic rather than ischemic cardiomyopathy.  AR

15  300, 317.  She therefore cannot establish "ischemic heart disease, with chest discomfort

16  associated with myocardial ischemia," and thus cannot establish that "all the requirements of that

17  listing" have been met.  *Key*, 754 F.2d at 1550.  Plaintiff does not argue that her cardiomyopathy

18  otherwise equals a listing.  Based on the foregoing, there was no error at step three of the

19  analysis.

20  ////

21  ////

22

23      [5] Listing 4.02 addresses chronic heart failure while on a regimen of prescribed treatment.
    Listing 4.04 addresses ischemic heart disease with chest discomfort associated with myocardial
24  ischemia, as described in 4.00E3, while on a regimen of prescribed treatment.  Listing 4.05
    addresses recurrent arrhythmias.  Listing 11.04 addresses "central nervous system vascular
25  accident."

26      [6] Listing 4.00E3 describes ischemic heart disease as coronary heart disease.

1   **C.     Steps Four and Five and Medical Opinions in the Residual Functional**
2   **Capacity Assessment to Perform Past Relevant Work and Other Work**

3        Steps four and five of the analysis require a determination of the plaintiff's residual

4   capacity to perform work functions of her past work (step four) and, if unable to do so, other

5   work (step five).  Plaintiff argues that the ALJ failed to credit the opinions of her treating

6   physicians, mental health providers, and otherwise mischaracterized the record in assessing her

7   residual functional capacity.

8        The weight given to medical opinions depends in part on whether they are proffered by

9   treating, examining, or non-examining professionals.  *Lester*, 81 F.3d at 830.  Ordinarily, more

10  weight is given to the opinion of a treating professional, who has a greater opportunity to know

11  and observe the patient as an individual.  *Id.*; *Smolen*, 80 F.3d at 1285.

12       To evaluate whether an ALJ properly rejected a medical opinion, in addition to

13  considering its source, the court considers whether (1) contradictory opinions are in the record;

14  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

15  treating or examining medical professional only for "clear and convincing" reasons.  *Lester*, 81

16  F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

17  rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  *Id.*, at

18  830.  While a treating professional's opinion generally is accorded superior weight, if it is

19  contradicted by a supported examining professional's opinion (e.g., supported by different

20  independent clinical findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d

21  1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

22  However, "[w]hen an examining physician relies on the same clinical findings as a treating

23  physician, but differs only in his or her conclusions, the conclusions of the examining physician

24  are not 'substantial evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

25       Here, the ALJ gave substantial weight to the opinion of consultative examining

26  physician, Dr. Sanford Seldon, M.D.  Dr. Seldon examined plaintiff on May 14, 2004.  AR 221-

25.  After  reviewing plaintiff's medical records and performing a physical examination, he

opined that plaintiff could sit, stand, or walk without limitation during an eight-hour workday,

had no limitations in the amount of weight she could lift or carry, and had no postural,

manipulative, visual, communicative, or workplace environmental limitations.  AR 225.

       The ALJ relied on this opinion and that of examining psychiatrist, Dr. Valerie Tutson,

M.D., in determining plaintiff's residual functional capacity ("RFC").  Dr. Tutson examined

plaintiff on May 15, 2004, diagnosed her with dysthymia, and opined that plaintiff's psychiatric

problems would not prevent her from performing simple, repetitive tasks, and that she would

have more success in a non-stressful work environment.[7]  AR 233-37.  Similarly, an undated

evaluation by a state agency physician indicates that plaintiff had moderate restrictions in social

functioning and in maintaining concentration, persistence, or pace.  AR 136-38.  This physician

opined that plaintiff could perform simple, repetitive tasks with limited public contact.  AR 138.

       Relying on these opinions, the ALJ determined that plaintiff had the RFC to perform

simple, routine tasks with limited public contact, and that she had no physical limitations with

regard to her ability to perform work activity.  AR 22.  He further found that plaintiff had no

exertional limitations.  *Id.*  Plaintiff alleges error in the ALJ's treatment of all these medical

opinions and in his assessment of her physical and mental RFC.

**1. <u>Mental Impairment/RFC</u>**

       The court first addresses the ALJ's assessment of plaintiff's mental RFC.  As noted

above, the ALJ relied on the opinions of Dr. Tutson and the state agency physician in

determining that plaintiff had the RFC to perform simple routine tasks with limited public

contact.  Plaintiff argues that this assessment is contrary to the opinion of a clinician at the

---

    [7]  "Dysthymia" is a "chronic mood disorder manifested as depression for most of the day, more days than not, accompanied by some of the following symptoms:  poor appetite or overeating, insomnia or hypersomnia, low energy or fatigue, low self-esteem, poor concentration, difficulty making decisions, and feelings of hopelessness."  *Stedman's Medical Dictionary*, 556 (27th ed. 2000).

1   Sacramento County Mental Health Treatment Center.  The records from the county center

2   consist of a single initial evaluation taken on August 22, 2005.  AR 369-72.  They reflect intake

3   notes regarding plaintiff's alleged symptoms and background, and contain a diagnostic

4   impression of "bipolar disorder NOS."  AR 372.  The person completing the form assessed

5   plaintiff with a GAF score of 51, similar to Dr. Tutson's earlier GAF rating of 50.[8]  AR 232, 372.

6          Significantly, the treatment notes from the county mental health center do not indicate

7   any functional limitations related to the preliminary diagnosis of bipolar disorder.  While this

8   preliminary diagnosis differs from Dr. Tutson's diagnosis of dysthymia, plaintiff fails to explain

9   how the different diagnoses result in differing functional limitations.  Rather, plaintiff asserts in

10  her brief that Dr. Tutson "appropriately diagnosed" plaintiff with dysthymia.  Pl.'s Br., 49:16-18.

11         Moreover, plaintiff does not explain how these treatment notes contradict the ALJ's

12  determination of her mental RFC, or how the ALJ's reliance on these notes rather than Dr.

13  Tutson's opinion would affect the RFC determination.  Indeed, the county treatment notes

14  indicate a slightly higher GAF assessment, and show that plaintiff did not evidence paranoid

15  ideation during the county interview as she did when she was examined by Dr. Tutson.  AR 369,

16  231.  Given the overall consistencies between the county treatment notes and Dr. Tutson's

17  opinion, the ALJ did not err by relying on Dr. Tutson's opinion.  There is no contrary opinion in

18  the record, nor has plaintiff pointed to evidence in the record to undermine Dr. Tutson's opinion.

19         Plaintiff's primary argument appears to be that Dr. Tutson's opinion is not supported by

20  her own findings.  In particular, plaintiff takes issue with Dr. Tutson's conclusion that there "are

21  no psychiatric limitations . . . that would preclude [plaintiff] from performing simple repetitive

22

23         [8] "GAF" stands for "Global Assessment of Functioning," and is a scale reflecting the
    "psychological, social, and occupational functioning on a hypothetical continuum of mental
    health-illness."  American Psychiatric Association: *Diagnostic and Statistical Manual of Mental*
24  *Disorders*, 34 (4th ed., Text Revision, 2000) ("DSM IV-TR").  A GAF of 50 indicates serious
    symptoms such as suicidal ideation, severe obsessional rituals, or serious impairment in social,
25  work, or school functioning.  *Id.*  A 51-60 rating indicates moderate symptoms such as flat affect
    or occasional panic attacks or difficulty in social, work or school relationships, such as few
26  friends or conflicts with peers or co-workers.  *Id.*

1    tasks" in light of her GAF rating of 50.  AR 232.

2          The record shows that Dr. Tutson in fact diagnosed plaintiff with a "current GAF of 50,

3    highest over the past year 60."  *Id.*   Thus, Dr. Tutson's assessment indicates a range of

4    functioning.  Although a GAF score of 50 indicates "serious impairment in social, occupational,

5    or school functioning," DMS IV-TR, 818, it does not directly correlate to severity assessments

6    utilized in Social Security disability determinations.  *See* Revised Medical Criteria for

7    Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (Aug.

8    21, 2000) ("The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale

9    used in the multiaxial evaluation system endorsed by the American Psychiatric Association.  It

10   does not have a direct correlation to the severity requirements in our mental disorders listings.").

11         Neither is a GAF score determinative of a person's residual functional capacity.  The

12   score merely reflects a clinician's opinion of an individual's overall level of functioning, and

13   does not necessarily reflect her ability to perform work related activities.  *See* DSM IV-TR,

14   32-34.  Here, Dr. Tutson conducted a comprehensive evaluation of plaintiff, diagnosed her with

15   dysthymia, and opined that she had the ability to perform simple and repetitive tasks in a non-

16   stressful environment.  AR 231-32.

17         Dr. Tutson's opinion is well-supported and uncontradicted by any other medical evidence

18   in the record.  In the absence of any contradictory evidence, it would be inappropriate for the

19   court to comment on the medical soundness of this opinion and it will not do so.  *See Banks v.*

20   *Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) (it is inappropriate to arbitrarily substitute

21   the factfinder's own judgment for competent medical opinion, and one must not succumb to the

22   temptation to play doctor and make his own independent medical findings) (citing *Balsamo v.*

23   *Chater*, 142 F.3d 75, 81 (2d Cir. 1998), *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975),

24   and *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).  There was no error in the ALJ's

25   reliance on Dr. Tutson's opinion.

26   ////

1          2. **Physical Impairments/RFC**

2          Plaintiff next argues that the ALJ improperly ignored the medical opinions of her treating

3    physicians, and improperly relied on the opinion of examining physician, Dr. Seldon in

4    determining her RFC.  While there are voluminous treating notes from various physicians in the

5    record, there are no formalized opinions by those physicians with regard to plaintiff's functional

6    limitations.  Nonetheless, plaintiff points to the treating notes of two cardiologists – Dr. Mark A.

7    Winchester, M.D. and Dr. Brian Kim, M.D. – both of whom diagnosed plaintiff with severe

8    cardiomyopathy in 2005.  *See* AR 300, 302, 313, 678.

9          Both Drs. Kim and Winchester assessed plaintiff's cardiomyopathy as New York Heart

10   Association ("NYHA") Functional Class III, despite being on optimal medications.  AR 300,

11   302, 313.  That NYHA classification indicates moderate limitations in physical activity with

12   symptoms of fatigue, palpitation, or dyspnea even during less than ordinary activity; and

13   comfortable only at rest.  *See* Merck & Co., *The Merck Manual of Diagnosis and Therapy* 657

14   Table 74-1 (18th ed. 2006).  In his August 3, 2005, treatment notes, Dr. Kim indicated that

15   plaintiff has "severe limitations of the functional class."  AR 300.  He wrote that "plaintiff has an

16   indication for ICD implantation per sudden cardiac death heart failure study."[9]  AR 300.  He

17   delayed further discussion regarding this procedure until plaintiff was able to see a

18   gastroenterologist about her liver cirrhosis (caused by Hepatitis C), and related history of

19   ascites.[10]  *Id*.

20         The ALJ has not adequately addressed these treating medical opinions.  Rather than

21   discuss these treatment notes concerning plaintiff's NYHA classification, specifically those

22   made by Dr. Kim in August 2005, the ALJ focused on earlier records concerning plaintiff's heart

23   _____

24         [9]  "ICD" stands for an internal cardioverter defibrillator.

25         [10]  "Ascites" is the "[a]ccumulation of serous fluid in the peritoneal cavity.  *Stedman's*
26   *Medical Dictionary*, 154 (27th ed. 2000).  The record shows plaintiff underwent procedures on
     several occasions to treat ascites caused by her damaged liver.  *See* AR 597, 604, 622-51.

1    condition.  AR 17.  He alluded to seemingly benign findings, such as "normal arteries," "no

2    evidence of parechymal infiltrates," and, "mild aortic insufficiency with structurally normal

3    aortic valve and no pericardial effusion," AR 17, to support his implicit conclusion that

4    plaintiff's heart condition produced no functional limitations.  However, he failed to explain how

5    more troubling findings, such as "severe mitral regurgitation," "dilated cardiomyopathy with

6    very severe LV systolic dysfunction and low cardiac output," could be dismissed without

7    comment.  *Id.*  More importantly, he did not discuss or develop evidence from plaintiff's treating

8    physicians indicating that plaintiff's heart impairment did result in functional limitations.

9          While there is no formalized opinion from either doctor regarding these limitations, the

10   ALJ was not free to ignore evidence of functional limitations in determining plaintiff's RFC.

11   *See Embrey v. Bowen*, 849 F.2d 418, 422 n.3 (9th Cir. 1988); *Lingenfelter v. Astrue*, 504 F.3d

12   1028, 1038 n.10 (9th Cir. 2007); *Lester*, 81 F.3d at 830-31.  This is especially true where, as

13   here, the examining physician's opinion on which the ALJ relied was rendered prior to the

14   diagnosis of cardiomyopathy and was thus made without reference to the related findings by

15   plaintiff's treating physicians regarding its severity and attendant functional limitations.  While

16   these treatment notes do not directly contradict Dr. Seldon's opinion, they cast significant doubt

17   on its legitimacy, and thus undermine the ALJ's RFC determination.

18         The RFC determination is based on "all the relevant evidence in the record, including . . .

19   medical records, lay evidence and the effects of symptoms, including pain, that are reasonably

20   attributed to a medically determinable impairment."  *Robbins v. SSA*, 466 F.3d 880, 883 (9th Cir.

21   2006) (citing SSR 96-8p; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)).  The ALJ was required to

22   consider all relevant evidence in the record in determining plaintiff's RFC, to resolve any

23   ambiguities, and to develop the record as appropriate.  He failed to do so, which is an erroneous

24   application of the applicable legal standard.

25         This case must be remanded for further evaluation of plaintiff's RFC in light of the

26   findings of her treating physicians, and if appropriate, for further development of the record by

1   obtaining those physicians' formalized opinions as to the functional limitations caused by

2   plaintiff's cardiomyopathy in conjunction with her other impairments.[11]  *See Crane v. Shalala*,

3   76 F.3d 251, 255 (9th Cir.1996) (ALJ has duty to develop the record even when claimant is

4   represented); *see also Smolen*, 80 F.3d at 1288 (where there is some objective evidence

5   suggesting a condition which could have a material impact on the disability decision, the ALJ

6   must generally investigate further).

7          Because this case must be remanded for reevaluation of plaintiff's RFC in light of her

8   cardiomyopathy, the court does not address the alleged errors regarding the ALJ's determination

9   at step five.  If it is determined that plaintiff has greater functional limitations than those

10  previously assessed, the ALJ may be required to obtain the testimony of a vocational expert.  *See*

11  *Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 577-78 (9th Cir. 1988) (when a

12  claimant's non-exertional limitations are "sufficiently severe" so as to significantly limit the

13  range of work permitted by the claimant's exertional limitations, the grids are inapplicable, and

14  the ALJ must take the testimony of a vocational expert in order to identify specific jobs within

15  the claimant's capabilities).

16      **D.  Credibility**

17          Plaintiff also challenges the ALJ's credibility finding with regard to her own testimony

18  and the statements and testimony by third parties.

19          The ALJ determines whether a disability applicant is credible, and the court defers to the

20  ALJ's discretion if the ALJ used the proper process and provided proper reasons.  *See, e.g.,*

21  *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make

22  an explicit credibility finding.  *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990); *Rashad*

23  *v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

24

25          [11]   Plaintiff also alleges that the ALJ's RFC determination is flawed because he did not
    properly find all of plaintiff's impairments severe at step two.  As discussed above, there was no
    error at step two.  Plaintiff fails to articulate how her other impairments – including cirrhosis,
26  hepatitis C, diabetes, and Grave's disease – affected her ability to do work-related activities.

1  supported by "a specific, cogent reason for the disbelief").

2         In evaluating whether subjective complaints are credible, the ALJ should first consider

3  objective medical evidence and then consider other factors.  *Bunnell v. Sullivan*, 947 F.2d 341,

4  344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

5  then may consider the nature of the symptoms alleged, including aggravating factors,

6  medication, treatment and functional restrictions.  *Id.* at 345-47.  The ALJ also may consider: (1)

7  the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

8  testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

9  prescribed course of treatment, and (3) the applicant's daily activities.  *Orn v. Astrue*, 495 F.3d

10  625, 636 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

11         "Without affirmative evidence showing that the claimant is malingering, the

12  Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

13  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

14         Here, the ALJ found plaintiff's allegations that she is severely restricted in standing,

15  walking, and carrying more than two pounds as contrary to the findings of the consultative

16  examiners and the medical evidence of record.  AR 19.  He also discredited the testimony of

17  plaintiff's caseworker because she was an advocate and not a medical expert.  *Id.*

18         As discussed above, the ALJ's reliance on the consultative examiner's opinion regarding

19  plaintiff's physical functional limitations is undermined by subsequent evidence of plaintiff's

20  severe cardiomyopathy and related functional limitations.  Based on that evidence, it also

21  appears that plaintiff's other conditions – including her liver damage – may adversely affect her

22  treatment for cardiomyopathy.  *See* AR 300 (Dr. Kim's notation that an ICD implantation may

23  be complicated by her liver damage and ascites).  Again, the ALJ failed to address the evidence

24  showing that plaintiff's heart condition imposed functional limitations and other complications,

25  which resulted in an erroneous RFC determination.

26  ////

16

On remand, the ALJ must reevaluate this evidence, and develop the record as appropriate with regard to the functional limitations caused by plaintiff's cardiomyopathy, both by itself and in conjunction with her other impairments.  Because the credibility determination is part and parcel of the RFC determination, and because plaintiff's RFC must be reevaluated, the court cannot say, based on the present record, that plaintiff's testimony, if credited, would mandate a finding of disability.  *See Robbins*, 466 F.3d at 883 (RFC determination includes consideration of subjective symptoms, including pain); *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988) (where case is remanded for further proceedings, crediting testimony as matter of law, and awarding benefits not required).

Accordingly, on remand, the ALJ should reevaluate plaintiff's testimony and that of lay witnesses in light of evidence concerning her functional limitations, together with any newly-developed evidence.  If plaintiff's testimony regarding her subjective complaints is discredited, the ALJ must, in the absence of affirmative evidence showing that plaintiff is malingering, "set forth clear and convincing reasons for rejecting plaintiff's testimony." *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  The ALJ must also provide specific, cogent reasons, relevant to each lay witness for discrediting such testimony.  *See Dodrill v. Shalala*, 12 F.3d 915, 919 (ALJ must give cogent reasons germane to each witness in order to discount lay testimony).

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further proceedings addressing the deficiencies noted above, and if appropriate, for further development of the record.

**V.  CONCLUSION**

Accordingly, IT IS ORDERED that:

1.  Plaintiff's motion for summary judgment is granted in part;

2.  The Commissioner's cross-motion for summary judgment is denied; and,

////

17

3.  This matter is remanded for further proceedings consistent with this order.  The Clerk is directed to enter judgment for plaintiff.

DATED:  March 25, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE